UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL NOGLE,

                Plaintiff,        Civil Action No. 16-12607
                                    Honorable Robert H. Cleland
                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 17]**

Plaintiff Michael Nogle ("Nogle") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 17], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Nogle is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Nogle's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

Nogle filed prior applications for DIB and SSI on March 30, 2007. (Tr. 19). On July 15, 2009, ALJ Melvyn Kalt issued a decision denying those applications. (Tr. 102-10). On February 20, 2010, the Appeals Council denied review. (Tr. 19).

Nogle then filed new applications for DIB and SSI on March 6, 2012, alleging disability as of November 28, 2009. (Tr. 219-31). These applications were denied initially on July 12, 2012. (Tr. 156-64). After a hearing, ALJ Jerome Blum issued a written decision on November 1, 2013, finding that Nogle was not disabled under the Act (Tr. 137-46). Subsequently, on February 27, 2015, the Appeals Council vacated ALJ Blum's decision and remanded the matter for a new hearing and decision. (Tr. 152-54). Thus, another administrative hearing was held before ALJ Blum on July 16, 2015; Nogle, who was represented by attorney Frank Cusmano, testified at that hearing, along with vocational expert Cheryl Mosley. (Tr. 38-68). On July 28 2015, ALJ Blum issued a written decision finding that Nogle is not disabled under the Act. (Tr. 19-32). On May 24, 2016, the Appeals Council denied review. (Tr. 1-5). Nogle timely filed for judicial review of the final decision on July 13, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

   *1.     Nogle's Reports and Testimony*

At the time of the 2015 administrative hearing, Nogle was 47 years old, and at 5'7" tall, weighed 150 pounds. (Tr. 41, 260). He was living in a house with his adult son. (Tr. 271). He completed high school and one year of college but had no further education or training.[1] (Tr. 41, 261). Previously, he worked as a printing press operator, but he stopped working in 2005

---

[1] According to Nogle, he "tried going back to college" in 2008 but had to "drop out of online college classes … due to the amount of sitting working on a computer." (Tr. 269).

3

because of the cumulative effects of his medical problems. (Tr. 41-42, 261).

Nogle alleges disability primarily as a result of back pain, anxiety, and depression. (Tr. 260). He testified that he constantly experiences low back pain, which he variously described as "throbbing," "stinging," "pins and needles," and "ach[y]," and which radiates down his legs. (Tr. 42-43). According to Nogle, standing, driving, bending, and lifting make his back pain worse, and he uses a cane four or five days a week. (Tr. 44, 61). He takes numerous medications for pain, has done three rounds of physical therapy, and has had "multiple injections" (some of which were temporarily beneficial). (Tr. 46). He "constantly" uses a heating pad and spends most days in a recliner because that is the only position in which he is comfortable. (Tr. 48-49). Nogle testified that he can sit for 15-30 minutes at a time, stand for 5-10 minutes, walk approximately one block, and lift 10 pounds. (Tr. 56-57).

In terms of his daily activities, Nogle has some difficulty with personal care (such as putting on his socks and shoes). (Tr. 272). He is not able to care for pets – he had to get rid of a dog he got for companionship after only six days because it pulled on the leash and hurt his back. (Tr. 272). Depending on his pain, he is sometimes able to prepare quick meals, load clothes into the washing machine, and shop in stores. (Tr. 273-74). However, his two adult sons help him with most chores, such as taking out the trash, mowing the lawn, shoveling snow, and doing dishes. (Tr. 273). He is able to drive but does so as little as possible, both because sitting for too long is painful and because his medications cause drowsiness. (Tr. 52, 274). He also has difficulty sleeping at night because of pain and, as a result, takes naps during the day. (Tr. 58). He is no longer able to attend church services or sporting events, which he previously enjoyed. (Tr. 275). Nogle described his social life as "almost non-existent," saying that he can no longer walk, stand, or sit long enough to socialize. (Tr. 276).

4

*2. Medical Evidence*

The Court has thoroughly reviewed Nogle's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

*3. Vocational Expert's Testimony*

Cheryl Mosley testified as an independent vocational expert ("VE") at the 2015 administrative hearing. (Tr. 64-67). The ALJ asked the VE to imagine a claimant of Nogle's age, education, and work experience who can perform sedentary work, with the following additional limitations: able to alternate between sitting and standing as needed; no repetitive bending or twisting; and only unskilled work, with simple, routine tasks secondary to chronic pain. (Tr. 64-65). The VE testified that the hypothetical individual would not be capable of performing any of Nogle's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working as a final assembler (200,000 jobs nationally). (*Id.*).

**D.    The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Nogle has not engaged in substantial gainful activity since November 28, 2009 (the alleged onset date). (Tr. 22. At Step Two, he found that Nogle has the severe impairments of mild degenerative disc disease of the lumbar spine with grade II spondylosis; small disc herniation at L4-5, unchanged; and small disc herniation at L5-S1, unchanged. (*Id.*). At Step Three, the ALJ found that Nogle's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 24).

The ALJ then found that Nogle retains the residual functional capacity ("RFC") to

perform sedentary work, with the following additional limitations: able to alternate between sitting and standing as needed; no repetitive bending or twisting; and only unskilled work, with simple, routine tasks secondary to chronic pain. (*Id.*). In doing so, the ALJ adopted the July 2009 RFC finding of the prior ALJ pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

At Step Four, the ALJ determined that Nogle is unable to perform any of his past relevant work. (Tr. 31). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Nogle is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ found that Nogle is not disabled under the Act. (Tr. 32).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's

decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F. Analysis

In his motion, Nogle argues that the ALJ erred in: (1) giving *res judicata* effect to the 2009 decision of ALJ Kalt; and (2) discounting the medical opinions of his treating physicians,

7

Marshall Sack, D.O. and Eric Backos, M.D. (Doc. #14 at 19-26). Each of these arguments is addressed below.

*1. The Court Finds No Error Warranting
Remand in ALJ Blum's Application of Drummond*

The Court must first address the *res judicata* effect of ALJ Kalt's determination that Nogle was not disabled as of July 15, 2009. (Tr. 110). *Res judicata*, which bars the re-litigation of the same claim or cause of action, has been "commonly applied" to social security cases, binding both claimants and the Commissioner. *Drummond*, 126 F.3d at 840-41. In *Drummond*, the Sixth Circuit held that "a subsequent ALJ is bound by the findings of a previous ALJ ... absent new and additional evidence." *Id.* at 842. *See also Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) ("In order to be awarded benefits for her condition since [a prior denial], [the claimant] must demonstrate that her condition has so worsened in comparison to her condition [as it existed in the prior adjudicated period] that she was unable to perform substantial gainful activity."). *Drummond* is applied "only to a finding of a claimant's [RFC] or other finding required at a step in the sequential evaluation process for determining disability . . . made in a final decision by an ALJ or the Appeals Council on a prior disability claim." *Acquiescence Rul. 98-4(6)*, 1998 WL 283902, at *3 (June 1, 1998). Subsidiary findings, such as those pertaining to a claimant's credibility, do "not constitute a finding that is *required* at a step in the sequential evaluation process for determining disability[.]" *Id.* at *3, n. 5 (emphasis in original). Thus, absent evidence that Nogle's condition worsened, ALJ Blum was required to presume that he still had the same RFC and that he still was not disabled. *See Hicks v. Comm'r of Soc. Sec.*, 2016 WL 4577048, at *6 (E.D. Mich. Aug. 15, 2016) ("an ALJ must adopt a finding of a claimant's RFC … made in the final decision by an ALJ … unless new and additional evidence or changed circumstances provide a basis for a different finding").

In his 2015 decision, ALJ Blum, citing *Drummond*, specifically found that "the medical evidence does not indicate that there has been a significant change in condition since the prior determination dated July 15, 2009, such that [Nogle] retains the residual functional capacity as stated in that decision." (Tr. 19). In reaching this conclusion, the ALJ noted that the x-rays, MRIs, and physical exams were essentially unchanged from the period at issue in the 2009 decision. (Tr. 25-27). For example, the ALJ noted that a June 2007 MRI showed a small herniation "questionably compromising" the right L5 nerve root and grade II spondylolisthesis of L5 on S1 but "no significant spinal stenosis." (Tr. 26, 339). The ALJ then noted that a December 2009 MRI "actually indicates some improvements from the prior MRI," showing grade I to II spondylolisthesis of L5 on S1, with no evidence of spinal canal stenosis, and a small central disc protrusion at L4-L5. (Tr. 26, 340). Subsequently, a December 2010 MRI found the spondylolisthesis and resulting stenosis "unchanged," the small disc protrusion at L4-L5 "unchanged," and some generalized bulging of the L1 disc, which was only "somewhat more obvious on the current study." (Tr. 384). In a December 2011 MRI report, Nogle's spondylolisthesis was described as "similar to the prior exam"; his small central disc protrusion at L4-L5 was "also similar to the prior study"; and his disc bulge at L1-L2 was "unchanged from the prior exam." (Tr. 382-83). And, finally, a September 2014 MRI showed that the small herniation at L4-L5 was "unchanged," and the neural foraminal narrowing at L5-S1 was also "unchanged." (Tr. 621). In short, the ALJ's conclusion that "the radiographic findings of [Nogle's] lumbar spine indicate no significant changes since the prior determination dated July 15, 2009" (Tr. 26) is supported by substantial evidence.

In addition to this radiographic evidence, the ALJ also noted that both Nogle's physical exams and his own self-reports did not indicate a significant change in his physical condition.

9

(Tr. 26-27). For example, although Nogle complained at times of flare-ups of his back pain (*e.g.,* Tr. 424 ("may be having flare-up" in August 2009), 408 ("more back pain recently" in August 2010), 477 (back pain worse after pulled by dog in November 2011)), there were many other occasions on which he reported that his back pain either had improved or had remained stable (*e.g.,* Tr. 417 (no change in symptoms in January 2010), 498 (morphine controlling pain and "able to do more" in April 2010), 394 ("doing well" in June 2011), 481 (back pain a "little better" in August 2011), 470 ("doing better" after brief flare-up one week earlier in May 2012), 580 (doing "well, in fact better than usual" in July 2014), 572 (neuropathy and muscle spasms "have improved with meds" in December 2014)). The ALJ also cited the report of the consultative examiner, Ernesto Bedia, M.D., who noted that, in 2012, Nogle demonstrated full range of motion of the lumbar spine, only mild paravertebral spasm and no point tenderness, negative straight leg raising bilaterally, normal deep tendon reflexes, no muscle atrophy, and a stable gait. (Tr. 27, 453-55). This evidence, too, suggests that there was no significant change in Nogle's condition following the July 2009 decision.

Despite this evidence, Nogle asserts that the ALJ erred in applying *Drummond*, claiming there "is a plethora of medical evidence that indicates a worsening of [his] condition since July 15, 2009." (Doc. #14 at 25). In support of this argument, Nogle first points to an August 31, 2010 EMG and nerve conduction study, which was consistent with left L5 radiculopathy. (*Id.* (citing Tr. 522-23)). Nogle claims this shows a worsening of his condition, citing physical therapy and treatment records from 2011, 2014, and 2015, where he "consistently complained of lower extremity radicular symptoms." (*Id.* (citing Tr. 350, 367, 606-19)). But, while the August 2010 objective testing did confirm that Nogle had a back impairment and resulting exertional limitations, it is not necessarily evidence that his condition changed for the worse; indeed, Nogle

complained about pain radiating from his back into his left leg both prior to (*e.g.,* Tr. 507, 508, 510, 512, 515) and after (*e.g.,* Tr. 471, 472, 479, 485, 493, 497) the ALJ's 2009 decision. Thus, where the evidence suggests that Nogle suffered from radiating back pain both before and after that decision, and where both ALJs accommodated this condition by limiting him to sedentary work, the 2010 EMG results – while formally diagnosing left L5 radiculopathy – do not necessarily evidence a worsening of Nogle's back impairment.

Next, Nogle asserts that he "has consistently reported pain levels of 6-7 out of 10 in 2012," implying that, at the time of the 2009 decision, his pain levels were lower.[2] (Doc. #14 at 26 (citing Tr. 353, 356, 465-70)). But, the evidence establishes the opposite: prior to the July 2009 decision, Nogle reported pain in the same range. (*E.g.,* Tr. 515 (pain 6-8/10 in June 2008), 514 (pain 5-8/10 in September 2008), 511 (pain 6/10 in April 2009), 509 (pain 8/10 in July 2009)). And, there were times after the 2009 decision that he reported lower pain levels. (*E.g.,* Tr. 505 (pain 3/10 in September 2009), 504 (pain 4/10 in October 2009), 498 (pain 4-5/10 in April 2010), 489 (pain 4/10 in December 2010), 475 (pain 5/10 in January 2012), 464 (pain 4-5/10 in November 2012)). Thus, there is substantial evidence to support the conclusion that, overall, Nogle's pain levels did not worsen after the prior ALJ decision.

Finally, Nogle asserts that he "has seen a worsening in his range of motion in the lumbar spine," which further evidences a significant change in his condition following the July 2009 decision. (Doc. #14 at 26). Specifically, Nogle asserts that prior to the 2009 decision, he had only a "slight limitation" in his range of motion; since that decision, however, he allegedly has had "pain with extension, flexion, and rotation." (*Id.* (citing Tr. 369-70)). Again, however,

---

[2] Even if this were true, Nogle's own self-reports are not *evidence* of a worsening condition, particularly where he repeatedly told Dr. Backos that his pain relief was adequate after the 2009 decision. (*E.g.,* Tr. 496-98, 502, 503, 506, 512-14).

while Nogle might have had restricted range of motion on the one referenced occasion, there is other evidence in the record suggesting that, at other times, he had full range of motion. (Tr. 455). As noted above, this Court's job is not to re-weigh the evidence, but to review the record to determine whether it contains substantial evidence in support of the ALJ's conclusions. *Cutlip*, 25 F.3d at 286; *Blakley*, 581 F.3d at 406; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

For all of these reasons, Nogle has not demonstrated that ALJ Blum's decision to give *res judicata* effect to the 2009 decision was erroneous.[3]

### 2. The ALJ Properly Evaluated the Opinions of Nogle's Treating Physicians, Dr. Sack and Dr. Backos

Nogle also argues that the ALJ erred in discounting the opinions of treating physicians Dr. Sack and Dr. Backos. (Doc. #14 at 19-24). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a

---

[3] To the extent Nogle relies on the 2015 opinions of Drs. Sack and Backos (Doc. #14 at 26 (citing Tr. 638-42, 643-47)) as evidence that his condition worsened after the 2009 decision, such an argument fails. As the ALJ correctly observed, the underlying evidence remained the same (Tr. 29-30), and the opinions themselves cited only the relatively benign and unchanged physical exams and MRI reports discussed above (Tr. 639, 644). Moreover, where the ALJ gave good reasons for discounting these medical opinions, *infra* at 14-16, they do not support the conclusion that Nogle's condition worsened.

whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)). At issue in this case are three specific treating physician opinions.

### a. Dr. Backos' 2013 Opinion

First, the record contains a September 6, 2013 narrative report from Nogle's treating pain management specialist, Eric Backos, M.D. (Tr. 536-39). There, Dr. Backos opined that Nogle was "unable to lift, carry, push or pull objects greater than ten pounds on an occasional basis"; needed to lie down secondary to his pain at least 10% of the time; and was "unable to work." (Tr. 538). The ALJ considered this opinion but gave it little weight, finding that it was inconsistent with the record as a whole. (Tr. 29).

Nogle argues that the ALJ's "conclusory statement that the assessment is inconsistent with the record as a whole is not valid." (Doc. #14 at 21). It is true that courts have recognized that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). In this case, however, the ALJ did

13

just that, identifying "specific discrepancies" between the record evidence and Dr. Backos' opinion, namely the objective clinical findings that consistently indicated no worsening of Nogle's condition. (Tr. 29). As discussed above, *supra* at 9, the record contains numerous MRI reports showing that Nogle's back condition was "unchanged" (Tr. 340, 383, 384, 621), which provide substantial evidence in support of the ALJ's decision to discount Dr. Backos' opinion as inconsistent with those objective findings.

In challenging the ALJ's evaluation of Dr. Backos' opinion, Nogle points to treatment notes from a single visit, in March 2010, which showed positive physical exam findings (such as moderate to severe spasms in the thoracolumbar paraspinals, decreased range of motion in the lumbar spine, and positive straight leg raising bilaterally). (Doc. #14 at 21 (citing Tr. 525)). While these findings were made at the visit in question, other exams yielded largely normal results, as the ALJ found. (Tr. 26-27 (citing Tr. 356-57 (normal range of motion of the lumbar spine and lower extremities, negative straight leg raising bilaterally, and decreased tenderness of the lumbar spine), 453-55 (full range of motion of the lumbar spine, no point tenderness, and negative straight leg raising bilaterally))). Thus, the ALJ's decision to discount Dr. Backos' 2013 opinion is supported by substantial evidence. *See, e.g., Pugh v. Comm'r of Soc. Sec.*, 2017 WL 1395511, at *5 (E.D. Mich. Mar. 27, 2017) ("Moreover, it is not enough for [the claimant] to point to evidence that supports the limitations imposed by [her treating physician]; rather, so long as the ALJ's conclusions are supported by substantial evidence, the Court must affirm the Commissioner's decision, even if there is substantial evidence supporting the opposite conclusion as well.") (citing cases).

### b. Dr. Sack's 2015 Opinion

The second treating physician opinion at issue is the May 28, 2015 opinion of Nogle's

primary care physician, Marshall Sack, M.D. (Tr. 639-42). Dr. Sack opined that Nogle was limited to sitting, standing, or walking for less than two hours in a workday; would require a sit/stand option at will; would require unscheduled breaks; and could occasionally lift ten pounds; but could not stoop, crouch, or climb ladders or stairs. (Tr. 641-42). Dr. Sack further opined that Nogle would be off task more than 25% of the workday and would miss more than four days of work per month. (Tr. 640, 642). The ALJ considered Dr. Sack's opinion and gave it some weight, noting that it was not fully consistent with the record as a whole. (Tr. 29-30).

Specifically, the ALJ discounted this opinion at least in part because "Dr. Sack consistently noted throughout the medical record that [Nogle's] condition was stable, that there were no new symptoms, and that [he] was doing well with his medications, without side effects." (Tr. 30). The reasons articulated by the ALJ for discounting Dr. Sack's opinion find ample support in the record. For example, as the ALJ recognized (Tr. 27-30), the record reflects periods of stability in Nogle's condition (*e.g.,* Tr. 417 (no change in symptoms in January 2010), 481 (pain a little better in August 2011), 464 (pain level the same in November 2012)), and it contains numerous statements that he was doing well with his current medications during the relevant period of time (*e.g.,* Tr. 464, 465, 470, 476, 480, 484, 496, 502, 610, 616). The ALJ also referenced a July 11, 2013 treatment note in which "Dr. Sack noted that [Nogle] had blisters on his [] hands from working in the garden[,]" which the ALJ found was "inconsistent with [Nogle's] testimony that he consistently spends most of the day in a recliner chair." (Tr. 27 (citing Tr. 598)). Thus, it was appropriate for the ALJ to discount Dr. Sack's opinion on this basis. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *see also Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (finding a treating physician's

opinion inconsistent with other medical records is a sufficient reason to discount it).

Nogle also argues that the ALJ erred in discounting Dr. Sack's opinion that he would be off task more than 25% of the workday because it was inconsistent with his own treatment notes and findings. (Doc. #14 at 22-23). In reaching this conclusion, the ALJ specifically noted that, in April 2012, Dr. Sack opined that Nogle would have no limitations carrying out detailed instructions. (Tr. 30, 444). In addition, the ALJ pointed out Dr. Sack's 2014 observations that Nogle exhibited accurate serial 7's and intact memory, and found no indication that Nogle had significant limitations regarding concentration or attention. (Tr. 30, 578). The ALJ also noted that, on April 1, 2015, Dr. Sack found that Nogle had no difficulty with concentration. (Tr. 30, 554). Although Nogle argues that Dr. Sack's opinion regarding his attention and concentration dealt with situations other than "being on task in a competitive work situation" (Doc. #14 at 23), it nevertheless is inconsistent with Dr. Sack's own findings, and was therefore a relevant consideration for the ALJ to weigh. *See, e.g., Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Thus, the Court finds no error in the ALJ's decision to discount Dr. Sack's 2015 opinion.

### c. Dr. Backos' 2015 Opinion

Also at issue is the ALJ's evaluation of Dr. Backos' June 11, 2015 opinion, in which he opined that Nogle could only walk 1-2 blocks, sit for ten minutes at a time, and stand for fifteen minutes at a time, and was unable to sit, stand, or walk for more than two hours total in a workday. (Tr. 644-47). Dr. Backos also opined that Nogle would require a sit/stand option at will and unscheduled breaks; could rarely lift ten pounds, twist, or climb ladders; could only

16

occasionally climb stairs; and could not stoop or crouch. (*Id.*). In addition, Dr. Backos opined that Nogle would miss more than four days of work per month. (Tr. 647).

The ALJ considered this opinion, giving it some weight, but discounting it to some extent because it was not consistent with the objective medical evidence, including the MRI reports discussed above, *supra* at 9. (Tr. 30). The ALJ also noted that Dr. Backos reported that Nogle's pain was consistently 8 out of 10 (Tr. 30, 644); however, Nogle himself testified that his average pain level was only 6 out of 10 (Tr. 45). It was appropriate for the ALJ to consider this inconsistency, as well as the fact that Dr. Backos' report of Nogle's pain level conflicted with his own treatment notes, which repeatedly indicated that Nogle's pain relief was adequate (e.*g.,* Tr. 496-98, 502, 503, 506, 512-14). *See Leeman*, 449 F. App'x at 497. Thus, the Court finds no error in the ALJ's evaluation of this opinion.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Nogle's Motion for Summary Judgment [14] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: May 26, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

## **REVIEW**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for

17

in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2017.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager